OPINION OF THE COURT
Harold J. Hughes, J.
Defendant Community Health Plan (CHP) moves pursuant *333 to CPLR 3211 for an order dismissing plaintiffs’ medical malpractice action on the ground that it is preempted by the Employee Retirement Income Security Act of 1974 (ERISA) (29 USC § 1144 [b] [2] [B]) and barred by Public Health Law § 4410. In the alternative CHP seeks an order in limine precluding the plaintiffs from raising the corporate defendant’s failure to provide medical treatment to Rebecca Blaine (Blaine) at the trial.
CHP, a health maintenance organization (HMO), was the medical insurer of plaintiff Rebecca Blaine. When she sought medical treatment for a back complaint, CHP assigned John Sullivan, a licensed physician’s assistant, to treat her. He and CHP’s other employees allegedly failed to timely diagnose and properly treat Mrs. Blaine’s back problem, or to advise her against becoming pregnant until the back condition was corrected. As a result of these actions, when Blaine became pregnant, she experienced great back pain and was required to undergo a discectomy. Blaine alleges that additional surgery, including fusion of vertebrate, will be required in the future. Plaintiffs claim that Mrs. Blaine’s injuries were caused by CHP’s staff’s negligence in failing to provide her a physician (as opposed to physician’s assistant), and by failing to provide tests, including X-rays, CAT scans, and MRI’s that would have revealed her true condition. Plaintiffs also claim that CHP failed to adequately supervise the physician’s assistant, failed to have appropriate written policies for a physician’s assistant and allowed the physician’s assistant to practice medicine without a license.
ERISA’s preemption of State law and common-law claims relating to any “benefit plan” (29 USC § 1144 [b] [2] [B]) covered by the statute is thoughtfully examined in Tufino v New York Hotel & Motel Trades Council (223 AD2d 245). Although Federal preemption is broad, it does not encompass such “run-of-the-mill” State law claims as unpaid rent, failure to pay creditors, or torts committed by an ERISA plan (Tufino v New York Hotel & Motel Trades Council, supra, at 247). Thus, medical malpractice and wrongful death claims, which are founded in tort and premised on an ERISA plan’s vicarious liability for the negligence of its employees or agents, are not preempted by ERISA (Andujar v Lenox Hill Hosp., 226 AD2d 179, 180; Tufino v New York Hotel & Motel Trades Council, supra, at 250; Nealy v US Healthcare HMO, 251 AD2d 144). Conversely, State causes of action are preempted where the HMO or its employees are not actual medical care providers and are sued merely in their capacity as the administrators *334 who determine what medical treatment to pay for (Nealy v US Healthcare HMO, supra, at 144), or as the insurers who pay independent contractors who in turn provide the actual care (Kirkland v Health Ins. Plan, NYLJ, Apr. 29, 1996, at 31, col 6 [Sup Ct, Suffolk County]).
Pointing to Blaine’s allegations that she was denied access to doctors and necessary treatment, CHP urges that this case is preempted because Blaine is allegedly challenging CHP’s administration of the plan or the extent of the plan’s benefits. CHP’s motion to dismiss ignores Blaine’s factual allegations and assumes facts outside the complaint. The complaint does not support CHP’s suggestion that it was not obliged to provide competent medical care to Blaine as part of its benefit plan, that its failure to provide adequate medical care was an administrative decision or that Blaine was only dealing with CHP in its capacity as an insurer rather than as the treatment provider. Assuming for the purpose of this motion that Blaine’s allegations are true (Cron v Hargro Fabrics, 91 NY2d 362, 366), CHP provided medical treatment to her through its employees. Instead of separating its administrative and treatment functions, as the HMO in Nealy v US Healthcare HMO (supra) did, CHP allegedly erased the line between the two. CHP may not avoid its responsibility to its patients by taking advantage of the confusion that it created by presenting itself and its employees as medical providers, by now urging that to inquire into its failure to provide adequate care would be to inquire into its administration of the plan or the provision of benefits. According to the complaint, CHP assumed responsibility for treating Blaine, and failed to provide adequate medical care without warning Blaine that she was being denied care or should petition for more care. Under such circumstances, the defendant is in the same position as any hospital, doctor or other health care provider with direct responsibility to the patient which assigns an employee to provide care and that care deviates from accepted medical practice.
CHP was not determining the extent of Blaine’s medical coverage under the plan when it assigned her to its nonphysician employees for initial examination and treatment without having a doctor first assessing Blaine’s condition or need for a physician’s treatment. When those allegedly underqualified employees failed to recognize the seriousness of Blaine’s condi *335 tion and either failed to refer her to qualified medical personnel or to provide necessary treatment or advice, they were not acting in an administrative capacity or determining the extent of CHP’s medical coverage.
The court may not consider CHP’s factual allegations as part of this motion to dismiss, but even if this were a motion for summary judgment, it is distinguishable from the cases relied on by CHP. Unlike the defendant doctor in Nealy v US Healthcare HMO (supra), CHP through its employees was acting as Blaine’s health care provider. CHP’s employees’ actions were not limited to administration and did not merely involve processing claim forms or “plumb [ing] the depths of [CHP’s] referral process” (at 144). Unlike the plaintiff in Nealy, Blaine went to CHP for medical treatment, was not given appropriate treatment and was not warned that she needed to “seek expert medical help immediately, regardless of the uncertainty of insurance coverage” (Nealy v US Healthcare HMO, supra, at 145). As Mrs. Blaine had no way of knowing that she was being denied treatment until she had already suffered the injury of which she now complains, she cannot be criticized for failing to follow any ERISA-mandated process for obtaining the medical treatments.
This is also not a case in which CHP can insulate itself from liability by claiming that the malpractice was the responsibility of an independent contractor or that Blaine is not prejudiced because she has viable malpractice actions against other groups or persons who actually provided the services (Kirkland v Health Ins. Plan, NYLJ, Apr. 29, 1996, at 31, col 6 [Sup Ct, Suffolk County], supra; Dalton v Peninsula Hosp. Ctr., 164 Misc 2d 912, 917). The physician’s assistant was CHP’s employee and it assigned that employee to treat Blaine. The absence of a physician to treat Blaine resulted from CHP’s unilateral determination of medical treatment. As this cause of action is not a claim against the benefits provided by the plan, it is not preempted by ERISA and, therefore, survives the motion to dismiss.
CHP’s claim of ERISA preemption clearly should have been pleaded as an affirmative defense and CHP waived the claim by failing to do so (Adsit v Quantum Chem. Corp., 199 AD2d 899, 900). Preemption of a claim presupposes that there is a cause of action to preempt. Thus, CHP is incorrect in characterizing its motion to dismiss as one for failure to state a cause of action and is not entitled to raise it at this time. CHP’s request to amend and raise the defense is denied as an exercise *336 of discretion in that the amendment comes on the eve of trial, which has already been postponed as a result of this motion. CHP has provided no explanation for its long delay in raising the defense nor demonstrated that there is no prejudice to plaintiffs. The court accordingly declines CHP’s invitation to speculate about plaintiffs’ ulterior motives in failing to name individual CHP employees within the Statute of Limitations.
CHP also argues that Piiblic Health Law § 4410 (1) bars a cause of action for medical malpractice against an HMO. Although the statute declares that actions may be directed against “each member, employee or agent of such organization or plan * * * for any negligent or wrongful act or misconduct committed by him or any person under his direct supervision and control while rendering professional services on behalf of such organization or plan”, Public Health Law § 4410 neither prohibits all lawsuits against HMOs that have provided “comprehensive health services” (Public Health Law § 4410 [1]) nor addresses the issue of liability in cases where an HMO fails to provide comprehensive health services or causes a patient to be served by para-professionals who are either unqualified or incapable of providing the necessary medical services. The decision in Dalton v Peninsula Hosp. Ctr. (supra) did not need to address these issues because in that case the plaintiff had been treated by a physician and the physician was a defendant. Again, this part of CHP’s motion is mislabeled as one for failure to state a cause of action. CHP should have raised this affirmative defense previously. Its failure to timely do so waived the defense and, for the reasons stated above, CHP’s application to replead is denied.
In the alternative, CHP moves in limine to limit the Blaines’ evidence and arguments solely to medical standards of care allegedly violated by the defendant’s physician’s assistant. CHP may be entitled to an order “excluding the introduction of anticipated inadmissable, immaterial or prejudicial evidence or limiting its use” (State of New York v Metz, 241 AD2d 192, 198). However, CHP has not even alleged, much less demonstrated, that its failure to provide Blaine medical benefits, treatment, coordination of treatment, or supervision of treatment was part of CHP’s benefit plan. While the court is not unmindful that CHP’s alleged failure to provide adequate professional care for Blaine will be prejudicial, it is relevant in this case. Having failed to specify which of its alleged actions are irrelevant or incompetent or to propose any means by which Blaine can prosecute her malpractice claim without referring *337 to CHP’s actions and inactions, CHP’s motion in limine is denied.
Accordingly, defendant’s motion to dismiss or, in the alternative, in limine, is denied with $100 costs.